**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 11, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEVEN R. THOMAS,

      Plaintiff-Appellant,

    v.

NEAL R. BROCKBANK, Contracting
Physician, Hutchinson Correctional
Facility, in his individual and official
capacity, and any bond(s) or sureties
under which he may perform his
duties; DENNIS GOFF, Nurse
Practitioner, Hutchinson Correctional
Facility, in his individual and official
capacity, and any bond(s) or sureties
under which he may perform his
duties; JANET MYERS, Health
Services Administrator, Hutchinson
Correctional Facility, in her individual
and official capacity, and any bond(s)
or sureties under which she may
perform her duties; (FNU)
TORRENCE, Contracted Eye Doctor,
Hutchinson Correctional Facility, in
his individual and official capacity,
and any bond(s) or sureties under
which he may perform his duties,

      Defendants-Appellees.

No. 05-3480

District of Kansas

(D.C. No. 04-CV-3315-MLB)

---

**ORDER AND JUDGMENT**[*]

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is

(continued...)

Before **MURPHY**, **SEYMOUR**, and **McCONNELL**, Circuit Judges.

During the eight months between the time he sustained an eye injury playing handball and the date he was transferred to another Kansas correctional facility, Steven Thomas, a Kansas state prisoner, received at least nine eye examinations for his injury—six by optometrists and three by an ophthalmologist. He was also examined by a prison nurse. Despite this treatment, Mr. Thomas claims that his Eighth Amendment rights were violated because the medical personnel who treated him were deliberately indifferent to his eye care needs.

The district court granted the defendants' motions for summary judgment and dismissed Mr. Thomas's claim on the merits even though Mr. Thomas did not exhaust his administrative remedies as 42 U.S.C. § 1997e(a) requires. At first blush, this appears to violate our precedents, which "require[] dismissal where a litigant has failed to complete such exhaustion." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1140–41 (10th Cir. 2005). But we hold that summary

---

[*](...continued)
therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

judgment was proper here because Mr. Thomas's complaint is frivolous within the meaning of 42 U.S.C. § 1997e(c)(2) and may therefore be dismissed "without first requiring the exhaustion of administrative remedies." We therefore **AFFIRM** the district court's judgment.

## FACTUAL BACKGROUND

Mr. Thomas was playing handball in the Hutchinson Correctional Facility (HCF) on April 25, 2004, when another inmate accidentally scratched Mr. Thomas's eye. He immediately went to HCF's medical clinic, where Nurse Brenda Beetch and Dr. Neal Brockbank examined the injury and prescribed medication.

The following day, Mr. Thomas was treated by defendant Dennis Goff, a registered nurse practitioner. Nurse Goff examined Mr. Thomas's eye and reviewed the medication ordered by Dr. Brockbank. Nurse Goff did not remember any physician telling Mr. Thomas that surgery would be required; he also did not cancel any surgery scheduled for Mr. Thomas because he is "not a medical doctor and do[es] not have the authority to countermand a doctor's orders." Appellee's Supplemental App. 34, ¶ 4. So far as the record shows, Nurse Goff had contact with Mr. Thomas only on this one occasion.

Two days after Mr. Thomas was injured, he was examined by Dr. Michael Torrence, an optometrist who contracted with Correct Care Solutions, Inc. (CCS) to provide health care services to inmates housed at HCF. He observed that Mr.

Thomas's eyeball was scratched and the pupil was dilated. He directed Mr. Thomas to continue taking the same eye drops and ointment that Dr. Brockbank prescribed. At no point did he order eye surgery for Mr. Thomas, state that surgery was required, or even suggest surgery to him.

Dr. Torrence next saw Mr. Thomas during a follow-up examination on May 10, 2004. At that time, Mr. Thomas's "cornea was clear, [his] retina was flat, [and] no holes or tears were seen. [His] corneal abrasion was 98% resolved." Mem. Op. 5.

Dr. Torrence performed additional follow-up examinations on May 25, July 6, and August 10. Following the August 10 exam, Dr. Torrence referred Mr. Thomas to an outside ophthalmologist. Mr. Thomas was eventually seen by Dr. F.L. Depenbusch, M.D., who performed examinations on or about August 19, September 22, and October 13, 2004, and prescribed further treatments for Mr. Thomas's eye ailments.

On December 14, 2004, Mr. Thomas was transferred from HCF to Ellsworth Correctional Facility. He had no further contact with any of the defendants after that date. After his transfer, Mr. Thomas apparently has continued to experience vision problems. He alleges that on November 21, 2005—thirteen months after he filed an amended complaint and eleven months after his last contact with the defendants—he was taken to the Kansas University

Medical Center and was told he will be blind in his right eye for the rest of his life.

Long before this diagnosis, however, Mr. Thomas filed suit against Dr. Torrence, Nurse Goff, and Ms. Janet Myers, a licensed registered nurse who is the health care administrator for CCS at HCF. He alleged that these defendants violated his Eighth Amendment rights by manifesting deliberate indifference to his serious medical needs. He then filed an amended complaint, using a civil rights complaint form that asked whether he previously sought administrative relief for his grievances. He answered "yes" to this question and explained the relief he sought and the results of his efforts as follows:

> Claimant has exhausted all administrative remedies available to Claimant by making demand that the Defendant(s) disclose the nature and cause of the action which has caused Claimant damages and the Defendant(s) have repeatedly admitted that they can identify no lawful authority under which Defendant(s) act, and respond by knowingly and intentionally causing Claimant further damages. Claimant cannot find, nor have Defendant(s) provided to Claimant, any evidence or other reason to believe that the Defendant(s) are operating under any lawfully constituted state or corporate authority.

Am. Compl. 9.

After Mr. Thomas filed his amended complaint, the district court instructed prison officials, pursuant to *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978), to prepare a report detailing the factual record in this case. The report describes the grievance Mr. Thomas filed in HCF and the response by Janet Myers, HCF's health care administrator. *See* Appellee's Supplemental App.

30–31. It also describes Mr. Thomas's appeal of Ms. Myer's response to the prison warden, together with the warden's response, which states: "If you should not agree with this response you do have the right to appeal my final decision within three (3) days to the office of the Secretary of Corrections, at your own expense." *Id.* at 32. Immediately after quoting the warden's response, the *Martinez* report states in bold typeface: "Plaintiff did not appeal to the Secretary of Corrections." *Id.*

After the *Martinez* report was completed, the defendants filed motions for summary judgment, without arguing failure to exhaust. The district court granted the defendants' summary judgment motions and dismissed Mr. Thomas's claim on the merits. The court also denied Mr. Thomas's motions for appointment of counsel. Mr. Thomas now appeals from those district court orders.

## DISCUSSION

### I. The District Court Did Not Abuse Its Discretion By Refusing to Appoint Counsel for Mr. Thomas.

During the course of this litigation, Mr. Thomas filed at least three motions asking the district court to appoint counsel. The district court denied those motions. "We review the denial of appointment of counsel in a civil case for an abuse of discretion," *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995), and find no abuse here.

These factors guide the decision to appoint counsel in a civil case: "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The district court evaluated each of these factors before denying Mr. Thomas's motion. It said:

> Because plaintiff is a state prisoner, the court will assume that plaintiff cannot pay for counsel. It does not appear that he has attempted to secure counsel. For the reasons set forth herein, the court finds that plaintiff's allegations of discrimination are not meritorious. Finally, the court finds that plaintiff has adequately presented his case without counsel, notwithstanding his claim that he is now blind in one eye.

Mem. Op. 2.

In his brief before this Court, Mr. Thomas challenges the district court's findings as to only one of these factors. He claims that he wrote "at least" 25 letters when attempting to secure counsel. Appellant's Br. 13. Even assuming that this is true, the district court's other, unchallenged findings—particularly as to the unmeritorious nature of Mr. Thomas's claims—sufficiently counterbalance this factor to convince us that the court's refusal to appoint counsel was not an abuse of discretion.

**II.    The District Court Properly Dismissed Mr. Thomas's Eighth Amendment Claim.**

In a somewhat unusual move, Mr. Thomas "stipulates" in his brief "that the court did act appropriately in dismissing his complaint for failure to state a claim" but argues that the court "should have allowed him the opportunity of counsel and discovery tools on his complaint." Appellant's Br. 12. We think Mr. Thomas never would have made that admission if he understood its full legal import. Given our obligation to liberally construe pro se pleadings, *see White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996), we will therefore construe his brief as challenging the merits of the district court's ruling.

Even interpreting Mr. Thomas's brief that way, we hold that the district court properly dismissed Mr. Thomas's Eighth Amendment claim for alleged deliberate indifference to his medical needs. This conclusion, however, is based on different reasoning than the district court's order.

The district court entered summary judgment under Rule 56(c) because it found that there was "'no genuine issue as to any material fact' and that [the defendants were] 'entitled to a judgment as a matter of law.'" *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)). The trouble with this ruling is that the district court "skip[ped] ahead to the merits of the suit" without first requiring Mr. Thomas to exhaust his

administrative remedies as 42 U.S.C. § 1997e(a) requires. *Fitzgerald*, 403 F.3d at 1141.

We have previously held that "§ 1997e(a) imposes a pleading requirement on the prisoner" and that the Prison Litigation Reform Act "established an *unique* procedure under which the [district] court, not the parties, is required to evaluate whether a claim on which relief may be granted is stated." *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1210–11 (10th Cir. 2003) (internal quotation marks omitted). We said in *Steele* that "a complaint 'that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.'" *Id.* at 1210 (quoting *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998)). We expanded this ruling in *Fitzgerald* when we said "that 42 U.S.C. § 1997e(a) requires exhaustion of administrative remedies as a precondition to bringing litigation, and *requires* dismissal where a litigant has failed to complete such exhaustion." 403 F.3d at 1140–41 (emphasis added) (citing *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534 (7th Cir. 1999)).

The *Martinez* report, as well as his own summary, indicated that Mr. Thomas had failed to exhaust his administrative remedies, yet the district court did not dismiss his claim as our precedents and § 1997e(a) mandate. This error, however, does not require reversal in this case because Mr. Thomas's complaint falls within an exception to the exhaustion requirement identified in *Fitzgerald*. *See id.* at 1141. There, we said that "[f]ederal courts should not adjudicate" a

prisoner's claim if he has failed to exhaust administrative remedies "*unless* the complaint satisfies 42 U.S.C. § 1997e(c)(2)." *Id.* (quotation marks and brackets omitted) (emphasis added). Section 1997e(c)(2) states that "[i]n the event that a claim is, on its face, frivolous . . . , the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2).

In *Fitzgerald*, we held that § 1997e(c)(2) permitted the district court to grant summary judgment on a prisoner's Eighth Amendment deliberate indifference claim even though the prisoner had failed to exhaust administrative remedies. *See* 403 F.3d at 1143. We found that the prisoner's complaint was frivolous because the defendant doctor's alleged conduct "did not amount to an act or omission 'sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 106, 107 (1976)).

We think that same result is proper here. The facts Mr. Thomas alleges simply cannot satisfy the subjective component of the well-known deliberate indifference test. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). As described above, Mr. Thomas's injury was promptly treated after it occurred on April 25, and he received the necessary and appropriate follow-up treatment (from Dr. Torrence *and* other outside specialists) until he was transferred to another facility in December 2004. There is also a complete lack of evidence to support Mr. Thomas's claim that Dr. Brockbank scheduled an emergency surgery

for April 26, 2004, and that Dr. Torrence, Mr. Goff, or Ms. Myers cancelled it. Rather, the undisputed evidence shows that no member of HCF's medical staff "ordered, required, or even suggested" that Mr. Thomas needed surgery. Appellee's Supplemental App. 34, 36. In short, Mr. Thomas fails to provide any evidence that Dr. Torrence, Mr. Goff, or Ms. Myers knew of—and then disregarded—an excessive risk to his health or safety.

The best that can be said for Mr. Thomas's claims of deliberate indifference is that he sincerely disagrees with the defendants' diagnoses or prescribed course of treatment for his eye injury. Those feelings, of course, do not amount to an Eighth Amendment violation. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle*, 429 U.S. at 106). The lack of any evidence showing that the defendants knew of and disregarded an excessive risk to Mr. Thomas's health convinces us that his claims are frivolous for purposes of § 1997e(c)(2) and that the district court therefore properly dismissed them even though he failed to exhaust his administrative remedies.

## CONCLUSION

The judgment of the United States District Court for the District of Kansas is **AFFIRMED**. We remind Mr. Thomas that he is obligated to continue making partial payments until the entire appellate filing fee has been paid.

Entered for the Court,

Michael W. McConnell
Circuit Judge

-11-